IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE ENRIQUE NUÑEZ, III, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-CV-4492 |
| | : | |
| WARDEN JANINE QUIGELY, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**MCHUGH, J.**                                                                                                           **DECEMBER 20, 2018**

On October 19, 2018, *pro se* Plaintiff Jose Enrique Nuñez, III, who is currently incarcerated in the Berks County Jail System, filed this civil action pursuant to 42 U.S.C. § 1983 against Warden Janine Quigley (misspelled "Quigely"), ICC Jessica Collins, Sgt. Roberts, C/O Butterworth, C/O Stephen Dew, and C/O Fetter. (ECF No. 1.) He subsequently filed two Motions for Leave to Proceed *In Forma Pauperis*. (ECF Nos. 4, 6.) By Memorandum and Order entered on November 19, 2018, the Court granted Nuñez leave to proceed *in forma pauperis* and dismissed his Complaint. (ECF Nos. 8, 9.) Specifically, the Court noted that: (1) Nuñez's claims regarding conditions of confinement in the disciplinary segregation unit did not rise to the level of a constitutional violation; (2) Nuñez had not stated a plausible access to the courts claim; and (3) Nuñez could not maintain a Fourteenth Amendment due process claim regarding the loss of his property. (ECF No. 8 at 3-7.) The Court granted Nuñez leave to file an amended complaint. (*Id.* at 7.)

The Court received Nuñez's Amended Complaint on December 10, 2018. (ECF No. 11.) Upon review, the Court concludes that the Amended Complaint does not cure the defects

identified in the initial Complaint. Therefore, for the following reasons, the Court will dismiss the Amended Complaint and provide Nuñez with a final opportunity to amend.

I. FACTS

As of October 1, 2018, Nuñez was housed in a cell in the disciplinary segregation unit. (Am. Compl. at 4.) He alleges that the cell was "inhumane to live in" because it had a leaking toilet and sink, mold, and "rusted bunks with odor." (*Id.*) He also claims that pipes ran vertically down through the cell and that inmates on the second tier would urinate down the pipes, "leaving [him] to eat [his] meals in [his] cell with a[n] odor of urine of somebody else." (*Id.*)

Nuñez goes on to allege that he has only received "minimum access" to the law computer and typewriter "because of the limit of 1 computer and typewriter shared with 70-100 inmates in 24 hour span being hard for Officers to get every inmate equal time." (*Id.*) He contends that because of this, his ability to "research on [his] criminal prosecutions and basic law" has been affected, and that he has been prevented from presenting a "strong substantial civil suit." (*Id.*) Nuñez further claims that his requests for printouts of legal research and law books have been denied.

Nuñez further asserts that he has been prohibited from using the phone while in disciplinary segregation, causing him to be unable to communicate with his family. (*Id.*) He also mentions that he can only shower twice a week and that he receives cold sandwiches three times a day. (*Id.*) Nuñez suggests that the receipt of cold sandwiches violates his equal protection rights because other inmates receive three hot meals. (*Id.*) He goes on to note that he has not received proper treatment for various mental ailments, including schizophrenia, bipolar

disorder, ODD, ADHD, OCD, and PTSD. (*Id.*) Finally, Nuñez claims that his Sixth Amendment rights have been violated because his damaged property was not replaced. (*Id.*)

The Court construes Nuñez's Amended Complaint to be asserting claims under the First, Sixth, Eighth, and Fourteenth Amendments. As relief, Nuñez requests that the Court order Berks County to "feed all inmate[s] equally." (*Id.* at 6.) He also requests "[p]roper access to law books," $20,000.00 from each Defendant, and a subpoena to provide his legal paperwork. (*Id.*)

## II. STANDARD OF REVIEW

Because the Court previously granted Nuñez leave to proceed *in forma pauperis*, the Court is required to dismiss the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* The Court may also consider exhibits attached to the complaint and matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As Nuñez is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

3

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).
As discussed below, the Amended Complaint fails to state a claim for relief.

      **A.**      **Discussion of the Named Defendants**

As noted above, Nuñez has named Warden Janine Quigley, ICC Jessica Collins, Sgt. Roberts, C/O Butterworth, C/O Stephen Dew, and C/O Fetter as the Defendants in this matter. However, he has not stated a claim against these individuals because nothing in the Amended Complaint describes how they were responsible for violating Nuñez's rights, whether due to their own misconduct or their deliberate indifference to known deficiencies in a policy or procedure that violated his rights. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Because Nuñez fails to mention these individuals in the body of his Amended Complaint, he has not stated a basis for imposing liability against them. For that reason alone, Nuñez's Amended Complaint is subject to dismissal. Some of his claims suffer from other deficiencies, which the Court addresses below.

      **B.**      **Claims Regarding Conditions of Confinement**

Nuñez first takes issue with various conditions in the disciplinary segregation unit. His claims regarding those conditions, however, again do not state a plausible basis for a constitutional violation.

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Nuñez suggests that he was both a pretrial detainee and a convicted inmate during the time set

forth in his Amended Complaint. Accordingly, the Court will analyze his claims under both amendments.

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). He must also establish that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To establish a basis for a Fourteenth Amendment violation, a prisoner must establish that the conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). That inquiry generally turns on whether the conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538-39; *Hubbard I*, 399 F.3d at 158.

Nuñez again asserts that his rights were violated when he was housed in a cell in the disciplinary segregation unit with a leaking toilet and sink, mold, "rusted bunks with odor," and the smell of dried urine from inmates on the upper tier urinating down the pipes. (Am. Compl. at 4.) Nothing in the Amended Complaint, however, suggests that these conditions either amounted to punishment or deprived him of any basic human need such as food, medical care, sanitation, or security. *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *David v. Wetzel*, No. 1:16-CV-00823, 2016 WL 3551484, at *1-3 (M.D. Pa. June 30, 2016) (concluding that prisoner had not stated Eighth Amendment claim with respect to air vents covered in mold and leaking toilets); *Thomas v. SCI-Graterford*, No. 11-6799, 2014 WL 550555, at *5 (E.D. Pa. Feb. 12, 2014) (concluding that denial of cleaning supplies for a two-week period was not unconstitutional); *cf. Robinson v. Phelps*, 946 F. Supp.

5

2d 354, 365 (D. Del. 2013) (dismissing Eighth Amendment claim where plaintiff alleged "he was forced to lie in his urine for five hours because [a nurse] refused to empty his urine jug").

Nuñez also again claims that while in disciplinary segregation, he was denied access to the phone, could only shower twice a week, and received cold sandwiches three (3) times a day. These conditions, however, are not constitutional violations. *See Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010) (per curiam) (finding no constitutional violation where the prisoner was denied access to shower facilities two days each week); *Strauss v. Ray*, 221 F.3d 1336, 2000 WL 875690, at *2 (6th Cir. June 19, 2000) (concluding that being served cold meals does not amount to a constitutional deprivation); *Williams v. Delaware Cty. Bd. of Prison Inspectors*, No. 17-CV-4348, 2018 WL 3235788, at * (E.D. Pa. July 2, 2018) (noting that being deprived phone calls "with no other facts surrounding [the] alleged deprivation[] [is] not [a] 'sufficiently serious deprivation[]' resulting in the denial of 'the minimal civilized measure of life's necessities'"); *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (concluding that "[b]eing served cold meals for a 45-day period . . . is not 'punishment' under *Bell*").[1] Accordingly, Nuñez's claims regarding the conditions of confinement will be dismissed.

### C. Equal Protection Claim Regarding Meals

Nuñez suggests that his equal protection rights were violated because inmates in disciplinary segregation receive cold sandwiches three times per day whereas other inmates receive three hot meals. The Equal Protection Clause directs that all similarly situated individuals be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439

---

[1] The Court previously noted that pretrial detainees do have a right of access to the courts, including telephone calls to counsel, under the First, Sixth, and Fourteenth Amendments. *See Randall v. Cty. of Berks*, No. 14-5091, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015). Nowhere in the Amended Complaint, however, does Nuñez allege that being deprived phone calls impeded his access to an attorney. Rather, he alleges that he was unable to contact his family. (Am. Compl. at 4.)

(1985). Here, because prisoners do not constitute a protected class for Fourteenth Amendment purposes, *see Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001), Nuñez's claim is governed by rational basis review. Nuñez, however, cannot meet this standard because disciplinary segregation inmates are not similarly situated to general population inmates. *See Wilson v. Jin*, 698 F. App'x 667, 672 (3d Cir. 2017) (per curiam) (noting that inmates in a Restricted Housing Unit are not similarly situated to general population inmates); *Boyd v. Anderson*, 265 F. Supp. 2d 952, 966 (N.D. Ind. 2003) (noting that "inmates confined in a disciplinary segregation unit are not similarly situated with general population inmates"). Accordingly, Nuñez's equal protection claim will be dismissed.

### D. Claims Regarding Access to Computer and Legal Materials

Next, Nuñez claims that he was denied printouts of legal materials and lawbooks, and that he only received "minimum access" to a computer and typewriter. (Am. Compl. at 4.) He contends that because of this, he was unable to "research on [his] criminal prosecutions" and was prevented from presenting "a strong substantial civil suit." (*Id.*) The Court understands Nuñez to be pursuing a claim under the First Amendment that he was denied access to the courts.

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis*, 518 U.S. at 350). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v.*

7

*Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*. Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Here, the public docket for Nuñez's criminal proceedings reflect that he was represented by counsel. Accordingly, with respect to his claim that he was unable to research his "criminal prosecutions," his right to access the courts was satisfied. Moreover, his claim that he would have been able to present a "strong substantial civil suit" is speculative at best, especially given that Nuñez has been able to present his claims to this Court in the instant suit. In sum, nothing in the Amended Complaint supports a plausible basis for a claim that Nuñez was denied access to the courts.

### E. Claims Regarding Loss of Property

Nuñez claims that his Sixth Amendment rights were violated when his property was not replaced because he was unable "to know the accusations, accuser, or [his] cases." (Am. Compl. at 4.) Presumably, Nuñez is referring to lost legal material relating to his criminal proceedings. His allegations, however, are simply insufficient to allege a violation of his rights under the Sixth Amendment. *See Romero v. Hayman*, CIV.A. 09-1041 KSH, 2011 WL 1344218, at *8-9 (D.N.J. Apr. 8, 2011), *aff'd in part, vacated in part on other grounds*, 486 F. App'x 981 (3d Cir. 2012) (per curiam) (no Sixth Amendment violation for temporary confiscation of prisoner's legal paperwork). Because Nuñez was represented by counsel for his criminal proceedings, he had a perfectly viable alternative for obtaining new copies of his legal paperwork, namely, asking his attorney for copies. *Cf. Tapp v. Brazill*, No. 11-677, 2014 WL 2587026, at *13 (E.D. Pa. June 9,

8

2014) (concluding that plaintiff, who was representing himself in criminal proceedings, could not maintain Sixth Amendment claim that his Sixth Amendment rights were violated by deprivation of legal documents because he could exchange the documents in his possession with others that were in storage). Thus, his Sixth Amendment claim will be dismissed.

### F. Claims Regarding Medical Care

Finally, Nuñez vaguely alleges that he has not received proper treatment for his schizophrenia, bipolar disorder, ODD, ADHD, OCD, and PTSD. (Am. Compl. at 4.) In the context of deficiencies in medical care, an inmate's rights are violated under either the Eighth or Fourteenth Amendment if a prison official acts with deliberate indifference to an inmate's serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Goode v. Giorla*, 643 F. App'x 127, 129 n.3 (3d Cir. 2016) (per curiam). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Nothing in the Amended Complaint, however, provides any facts to plausibly suggest that any officials employed by the Berks County Jail System were deliberately indifferent to his medical needs. Accordingly, Nuñez cannot maintain his claims regarding his medical care at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Nuñez's Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). However, the Court will give Nuñez one more opportunity to file a second amended complaint in the event he can state a plausible basis for a constitutional claim. A separate Order follows.

**BY THE COURT:**

**/s/ Gerald Austin McHugh**
United States District Court Judge